**ORIGINAL**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KATHY KANE LOCHMANN,

      Plaintiff,

vs.

TRW INC., an Ohio corporation, and
RONALD A. MUCKLEY,

      Defendants.

Case No. 01-60131
Hon. Marianne O. Battani

FILED
2002 MAY 22  P 12: 02
U.S. DIST. COURT CLERK
EAST DIST. MICH.
DETROIT

_____

TRW INC., an Ohio corporation,

      Plaintiff,

vs.

KATHY KANE LOCHMANN,

      Defendant.

_____

### NOTICE OF HEARING

### DEFENDANTS' MOTION TO STRIKE
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### PROOF OF SERVICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY KANE LOCHMANN,

    Plaintiff,

vs.

TRW INC., an Ohio corporation, and
RONALD A. MUCKLEY,

    Defendants.

Case No. 01-60131
Hon. Marianne O. Battani

_____

TRW INC., an Ohio corporation,

    Plaintiff,

vs.

KATHY KANE LOCHMANN,

    Defendant.

_____

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that a hearing on Defendants' Motion to Strike Plaintiff's Motion for Class Certification will be held on a date and at a time to be set by the Court.

**VERCRUYSSE METZ & MURRAY, P.C.**

By: _Robert M. Vercruysse_
    **Robert M. Vercruysse (P21810)**

By: _Susan H. Hiser_
    **Susan Hartmus Hiser  (P45681)**
31780 Telegraph Road, Suite 200
Bingham Farms, MI  48025-3469
(248) 540-8019

Dated:  May 20, 2002                    **Attorneys for Defendants**

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KATHY KANE LOCHMANN,**

    Plaintiff,

vs.

**TRW INC.**, an Ohio corporation, and
**RONALD A. MUCKLEY,**

    Defendants.

Case No. 01-60131
Hon. Marianne O. Battani

---

**TRW INC.**, an Ohio corporation,

    Plaintiff,

vs.

**KATHY KANE LOCHMANN,**

    Defendant.

---

## DEFENDANTS' MOTION TO STRIKE
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

For the reasons set forth in the attached Brief, Defendants TRW Inc. and Ronald A. Muckley, by their attorneys, Vercruysse Metz & Murray, request that this Court grant their Motion, Strike Plaintiff's Motion for Class Certification, and award Defendants their reasonable costs and attorneys' fees for the necessity of bringing this Motion. Defendants also request that the Court include in its Order a prohibition on Plaintiff seeking to amend her Complaint to include a class action claim at this point in the litigation.

Concurrence of Plaintiff's counsel was sought on May 20, 2002, but was not obtained.  It is therefore necessary to bring this Motion before the Court.

Respectfully Submitted,

**VERCRUYSSE METZ & MURRAY, P.C.**

By: _Robert M. Vercruysse_
**Robert M. Vercruysse (P24810)**

By: _Susan X. Hiser_
**Susan Hartmus Hiser (P45681)**
31780 Telegraph Road, Suite 200
Bingham Farms, Michigan  48025
(248) 540-8019

Dated:  May 20, 2002          **Attorneys for Defendants**

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY KANE LOCHMANN,

       Plaintiff,

vs.

TRW INC., an Ohio corporation, and
RONALD A. MUCKLEY,

       Defendants.

Case No. 01-60131
Hon. Marianne O. Battani

_____

TRW INC., an Ohio corporation,

       Plaintiff,

vs.

KATHY KANE LOCHMANN,

       Defendant.

_____

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Page

CONTROLLING AUTHORITY ................................................................................................. iii

STATEMENT OF RELEVANT FACTS ...................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.   LOCHMANN CANNOT MOVE TO CERTIFY A CLASS BECAUSE SHE HAS NOT
     PLED A CLASS ACTION CLAIM IN HER SECOND AMENDED COMPLAINT ............................ 3

II.  LOCHMANN CANNOT AMEND HER COMPLAINT AT THIS LATE STAGE IN
     ORDER TO INCLUDE A CLASS ACTION CLAIM .................................................................. 4

     A.   Lochmann Could Have Included A Class Action Claim In Her Original
          Complaint Or In Either Of Her Previous Two Amended Complaints ............................ 4

     B.   It Would Be Unduly Prejudicial To Defendants To Allow Lochmann To
          Amend Her Complaint At This Point To Include A Class Action Claim ......................... 6

     C.   It Would Be Futile To Allow Lochmann To Amend Her Complaint To
          Include A Class Action Claim Because She Cannot Satisfy Any Of The
          Requirements Of Fed. R. Civ. P. 23(a) ...................................................................... 8

          1.   The Proposed Class is Not So Numerous that Joinder of All Members
               Would be Impracticable .................................................................................. 8

          2.   Lochmann Cannot Demonstrate Either Commonality or Typicality ................... 9

          3.   Lochmann Will Not Fairly and Adequately Protect the Interests of the
               Proposed Class Members ................................................................................ 15

     D.   It Would Be Futile To Allow Lochmann To Amend Her Complaint To
          Include A Class Action Claim Because She Cannot Satisfy The
          Requirements Of Fed. R. Civ. P. 23(b)(2) or (3) ........................................................ 16

CONCLUSION ......................................................................................................................... 19

i

## STATEMENT OF THE ISSUES PRESENTED

I.    Whether Plaintiff's Motion for Class Certification should be stricken where Plaintiff's Second Amended Complaint does not include a class action claim.

    Defendants Answer: Yes

II.    Whether Plaintiff should be permitted to amend her Complaint to include a class action claim at this late stage in the proceedings where this case has been pending for nearly two years, where discovery is now closed, and where Plaintiff has already amended her Complaint twice and has failed to include a class action claim.

    Defendants Answer: No

III.    Whether Plaintiff should be permitted to amend her Complaint to include a class action claim at this late stage in the proceedings where such an amendment would be futile because Plaintiff cannot meet the necessary requirements to certify her class.

    Defendants Answer: No

## CONTROLLING AUTHORITY

Page

### CASES

Alexander v. Ford Motor Co.
204 F.R.D. 314 (E.D. Mich. 2001) ---------------------------------------------------- 17

Allen v. Chicago Transit Auth.
2000 WL 1207408 (N.D. Ill. 2000) -------------------------------------------10, 11, 12, 13

Allison v. Citgo Petroleum Co.
151 F.3d 402 (5th Cir. 1998) --------------------------------------------------------16, 17

Alsup v. Int'l Union of Bricklayers and Allied Craftsmen of Toledo, Ohio
902 F.2d 1568, 1990 WL 67375 (6th Cir. 1990) --------------------------------------7

Appleton v. Deloitte & Touche L.L.P.
168 F.R.D. 221 (M.D. Tenn. 1996) ------------------------------------------------10, 12

Bacon v. Honda of Am. Mfg., Inc.
205 F.R.D. 466 (S.D. Ohio 2001) ------------------------------------------10, 12, 15, 17

Bennet v. Roberts
2000 WL 781868 (N.D. Ill. 2000)------------------------------------------------12, 14

Butler v. Sterling
201 F.3d 371, 2000 WL 353502 (6th Cir. 2000) ---------------------------------------- 17

Davis v. Therm-O-Disc, Inc.
791 F. Supp 693 (N.D. Ohio 1992)----------------------------------------------------4, 6

Duggins v. Steak 'N Shake, Inc.
195 F.3d 828 (6th Cir. 1999) --------------------------------------------------------6

Foman v. Davis
371 U.S. 178, 83 S. Ct. 227 (1962)----------------------------------------------------4

Gorence v. Eagle Food Centers, Inc.
1994 WL 445149 (N.D. Ill. 1994)--------------------------------------------11, 13, 17, 18

Grant v. Morgan Guaranty Trust Co. of N.Y.
548 F. Supp. 1189 (S.D. N.Y. 1982)---------------------------------------------------- 10

Hively v. Northlake Foods, Inc.
191 F.R.D. 661 (M.D. Fla. 2000 ) ------------------------------------------------------------- 10, 13, 15

In re American Med. Systems, Inc.
75 F.3d 1069 (6th Cir. 1996) ----------------------------------------------------------------------8

Miller v. Hygrade Food Products Co.
18 F.R.D. 638 (E.D. Penn. 2001) ------------------------------------------------------------------7

O'Neil v. Appel
165 F.R.D. 479 (W.D. Mich. 1996) ------------------------------------------------------------ 13

Parry v. Mohawk Motors of Michigan, Inc.
236 F.3d 299 (6th Cir. 2000) ----------------------------------------------------------------------5

Rockey v. Courtesy Motors, Inc.
199 F.R.D. 578 (W.D. Mich. 2001) ----------------------------------------------------8, 11, 17

Rogan v. Lane
191 F.3d 453, 1999 WL 777671 (6th Cir. 1999) -------------------------------------------------6

Slader v. Pearle Vision, Inc.
2000 WL 1702026 (S.D. N.Y. 2000) --------------------------------------------------------- 15

Smith v. Transworld Systems, Inc.
953 F.2d 1025 (6th Cir. 1992) --------------------------------------------------------------------6

Teamsters Union Local No. 20 v. Georgia-Pacific Co.
215 F.3d 1327, 2000 WL 712356 (6th Cir. 2000)--------------------------------------------------6

Van Vels v. Premier Athletic Center of Plainfield, Inc.
182 F.R.D. 500 (W.D. Mich. 1998) ------------------------------------------------------------- 11

## RULES

Fed. R. Civ. P. 15(a)------------------------------------------------------------------------------4

Fed. R. Civ. P. 23(a)------------------------------------------------------------------------------8

Fed. R. Civ. P. 23(b)---------------------------------------------------------------------- 16, 17, 18

Fed. R. Civ. P. 23(b)(2) ----------------------------------------------------------------------- 16

Fed. R. Civ. P. 23(b)(3) -----------------------------------------------------------------------17, 18

Fed. R. Civ. P. 23(c)(1) -------------------------------------------------------------------------3

## STATEMENT OF RELEVANT FACTS

In her Motion for Class Certification, Plaintiff asks this Court to certify a class of "all female engineers employed by Defendant TRW at its Farmington Hills facility at the time the salary adjustment[s] were made by Defendant Muckley pursuant to the [August 1999] pay equity analysis commissioned by Defendant Muckley." Plaintiff's Motion is procedurally improper and therefore should be stricken because her Second Amended Complaint does not contain a class action claim. It has been nearly two years since this case was filed and discovery is finally closed. Plaintiff cannot now amend her Complaint at this late juncture to include a class action claim because of her undue delay and because, in any event, such an amendment would be futile because she cannot meet the necessary requirements to certify her class.

Plaintiff seeks to certify a class of all female engineers employed at TRW's Farmington Hills, Michigan location in August of 1999, based on the alleged discriminatory results of salary adjustments following an internal pay equity review conducted by the Engineering Directors working under Defendant Muckley. This internal equity review was conducted by the Engineering Directors at their request in the summer of 1999 because of two external market issues impacting the Engineering workforce.[1]   (MacDonald)   First, new-hire salaries were increasing at a rate which was higher than the rate of yearly salary adjustments within TRW. Thus, recent Engineering graduates were being hired at salary rates higher than TRW Engineers who had worked for a couple of years. Current Engineers' salaries therefore had to be annually

---

[1] Lochmann alleges in her Motion (¶ 9) that Defendant Muckley ordered the pay equity review. The depositions of Muckley and Human Resources Manager Sandra MacDonald concerning this equity review were taken on May 13, 2002, *after* Lochmann filed her Motion. Both MacDonald and Muckley testified unequivocally that Muckley did *not* order the equity review and, in fact, did not even know about it until after it had commenced. (MacDonald; Muckley) Their deposition transcripts are not yet available, but will be filed with the Court as a supplement to this Motion once they have been transcribed.

adjusted in order to alleviate this salary compression caused by favorable market conditions. (MacDonald)  Second, the Engineering field had a hot job market and TRW risked losing its top Engineers to competitors offering to pay higher salaries.  Many TRW Engineers were receiving employment offers from other companies and TRW found itself setting employee salaries by making piece-meal counteroffers in order to retain them.  (MacDonald)  The Engineering Directors thus approached MacDonald and requested the information necessary to do an internal equity review of their subordinates' salaries, with the goal of adjusting salaries upwards where necessary.

At the time, there were six Engineering Directors working for Muckley: Plaintiff -- Kathy Kane Lochmann (female), Mary Raber (female), Casilda deBenito (female), Dale Karolak (male), Roger McCurdy (male), and Steve Sarlitto (male).  In total, there were 132 product and design Engineers reporting to these six Directors whose salaries were to be examined by the Directors as a part of this equity review. (MacDonald)  Of these 132 engineers, 18 were women. (Exhibit 1)[2]  The Directors requested information on each of these employees regarding factors such as current salaries, level of experience, educational background, and market value of position, to name a few, by which they could compare their own employees' salaries to those of employees from the other Engineering groups and to external market values.[3]

After reviewing the salaries of the 132 Engineers, and comparing them to one another and to the market data, the Engineering Directors recommended adjustments to eleven of the

---

[2]  Exhibit 1 is a spreadsheet listing the employees whose salaries were to be examined as part of this internal equity review.  Also included on the spreadsheet is other salary data requested by the Directors, such as annual rate, experience, education, and market factors.  Exhibit 1 is covered by a protective order and is therefore being filed under seal along with the original of this Brief.

[3]  It was understood and agreed upon that this shared employee salary data would be used solely for the internal equity analysis and would be kept confidential by the Directors.

Engineers' salaries.  Raber (female) recommended increasing the salaries of six of her employees (1 female, 5 males); Karolak (male) recommended increasing the salaries of three of his employees (1 female, 2 males); deBenito (female) recommended increasing the salary of one of her employees (male); and Lochmann (female) recommended increasing the salary of one of her employees (female).[4]   (Exhibit 2)[5]   The eight male employees received salary increases averaging 6.25%.  The three female employees received salary increases averaging 6.67%.[6]  Id. Muckley approved the proposed salary increases without modification based upon the aggregate amount of dollars spent as compared to budget.  He did not examine the individual proposals made by each Director.  (Muckley)

## ARGUMENT

### I. Plaintiff Cannot Move To Certify A Class Because She Has Not Pled A Class Action Claim In Her Second Amended Complaint

Plaintiff's Motion is procedurally improper because she has not pled a class action claim in her Second Amended Complaint.  Fed. R. Civ. P. 23(c)(1) provides that "[a]s soon as possible *after* the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."  (Emphasis added)  Plaintiff is asking this Court to determine whether a class action can be maintained as such; however, she has failed to first commence the action.  Simply put, Plaintiff has put the cart before the horse.  Her motion is procedurally

---

[4] The other two Engineering Directors, McCurdy (male) and Sarlitto (male), did not recommend any adjustments to their employees' salaries.

[5] Exhibit 2, also covered by a protective order, is being filed under the same parameters as Exhibit 1.

[6] As compared to the entire group of 132 engineers considered, the average male salary increase was 0.44%, whereas the average female salary increase was 1.11% (based upon a group of 114 males and 18 females). Lochmann's statistical expert reached a different conclusion because he was examining salary increases given to a different group of employees at a different point in time.  See Lochmann's Motion, ¶ 11 and Exhibit B, attached thereto.

3

improper and therefore should be stricken.

## II.     Lochmann Cannot Amend Her Complaint At This Late Stage In Order To Include A Class Action Claim

It is anticipated that after reading this Response, Lochmann will seek to amend her Complaint in order to cure this deficiency. Lochmann has already twice amended her Complaint -- once shortly after filing it to add a claim of retaliation and again, nine months later, to add a federal Equal Pay Act claim.[7] While it is true that Fed. R. Civ. P. 15(a) states that leave to amend "shall be freely given when justice so requires," leave should not be granted in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962).

### A.     Lochmann Could Have Included A Class Action Claim In Her Original Complaint Or In Either Of Her Previous Two Amended Complaints

Lochmann's class action claim is based on salary adjustments made pursuant to an internal equity review conducted in August of 1999. As stated above, Lochmann was a decision-maker in the review process. She had access to all employees' salaries who were considered and to the amounts of the adjustments that were made. Furthermore, she was the sole decision-maker with respect to her group of employees. If any discrimination was occurring, it would have been,

---

[7] At the time Lochmann added her Equal Pay Act claim (June of 2001), discovery was scheduled to close in state court in August, 2001. Upon adding this federal claim, Defendants removed this case to federal court, and the parties were given an additional four months of discovery. Discovery was extended twice by stipulation of the parties -- once to give Defendants additional time within which to gather extensive salary data and a second time to give Plaintiff's expert additional time within which to analyze the data and render his opinion. Discovery finally closed on April 15, 2002, with no further extensions having been sought by either party. Then, on April 25, 2002, Plaintiff filed her Motion for Class Certification.

4

at least in part, at her direction and she certainly would have known about it at the time. Thus, if she truly believed that the eleven salary adjustments that were made had a discriminatory effect on women, she could have included such a claim in any one of her three prior complaints.

Furthermore, in September of 2000, after obtaining a multitude of salary information under false pretenses regarding all employees at TRW's Farmington Hills location and forwarding it to her attorneys, Lochmann amended her Complaint for the first time to include a state law wage claim.[8] Having all employees' salaries at her disposal, she could have included a class action claim at this point but chose not to. Moreover, as early as February of 2001, over 15 months ago, Lochmann's statistical expert had already opined that "the wage disparities between men and women at TRW's Farmington Hills facility are substantial and statistically significant." (Exhibit 3)[9] Lochmann then amended her Complaint a second time in June of 2001, still failing to include a class action claim. Any attempt to amend her complaint now for a third time, after the close of twenty months of discovery and after repeated failures to plead a class action claim thus far, clearly demonstrates undue delay, bad faith, and dilatory motive on her part and should not be permitted by this Court. See Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299 (6th Cir. 2000) (court did not permit amendment of complaint where the motion to amend came almost nine months after the plaintiff's first amended complaint and well over a year after he filed his original complaint).

---

[8] This conduct resulted in the termination of Lochmann's employment on September 14, 2000.

[9] Exhibit 3 is an excerpt from Lochmann's Facilitation Summary, dated February 7, 2001.

5

**B.   It Would Be Unduly Prejudicial To Defendants To Allow Lochmann To Amend Her Complaint At This Point To Include A Class Action Claim**

It would also be unduly prejudicial to Defendants to allow Lochmann to amend her Complaint at this point to include a class action claim because nearly two years of discovery has finally closed.  It is well-established that "[t]he decision whether or not to permit amendment of plaintiff's complaint is relegated to the discretion of the trial court."  See Davis v. Therm-O-Disc, Inc., 791 F. Supp 693, 695 (N.D. Ohio 1992).  In Davis, the court denied leave to amend a complaint to add an entirely new theory of recovery after discovery had closed.  The court commented that discovery, "which, in the eyes of most reasonable persons is a matter far from negligible in terms of cost and time, was conducted with a view toward the case as originally advanced and vigorously pursued by plaintiff during a vast portion of this suit's lifespan."  Id. The court concluded that to allow the amendment would substantially change the plaintiff's case, which "undoubtedly prejudices the defendant, and would effectively permit plaintiff to reschedule the prosecution of this case both on terms more to her liking and for reasons which could have and should have been raised last year."  Id.  See also, Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (allowing the amendment would create prejudice to defendants in having to reopen discovery and prepare a defense for a claim quite different from the claim that was already before the court); Rogan v. Lane, 191 F.3d 453 (table), text at 1999 WL 777671, **3 (6th Cir. 1999) (unpublished) (no abuse of discretion in denying leave to amend after discovery had closed, and plaintiff had offered no legitimate reason for the delay); Teamsters Union Local No. 20 v. Georgia-Pacific Co., 215 F.3d 1327 (table), text at 2000 WL 712356, **3 (6th Cir. 2000) (unpublished) (affirmation of trial court's refusal to allow a second amended complaint after discovery had closed upon grounds of undue prejudice to defendant).

6

The Sixth Circuit has not hesitated to affirm refusals of leave to amend to include class action claims. See, e.g., Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1032 (6th Cir. 1992). In Alsup v. Int'l Union of Bricklayers and Allied Craftsmen of Toledo, Ohio, 902 F.2d 1568 (table), text at 1990 WL 67375, **6 (6th Cir. 1990), the court affirmed the trial court's denial of plaintiff's motion to amend the complaint to add class action allegations. The court held that "at the time the lawsuit was filed, the plaintiffs clearly knew or should have known the facts upon which the proposed amendment was based," and "the proposed amendment would be unduly prejudicial to the defendants and the denial of the amendment would result in a *de minimis* injustice to the plaintiffs." Id. Indeed, "denying class certification does not mean that plaintiffs will ultimately be denied relief in they can prove their claims." See Miller v. Hygrade Food Products Co., 18 F.R.D. 638, 643 (E.D. Penn. 2001).

As noted above, Lochmann cannot credibly claim that she is only now aware of alleged discrepancies in salary adjustments given to female employees as a part of the 1999 internal equity review. If she is permitted to add an entire additional *class* of plaintiffs now, Defendants will have no opportunity to conduct essential discovery. Furthermore, as is discussed in greater detail below, Lochmann, as a supervisor and decision-maker in her subordinates' salaries, is not representative of the class which she purports to represent. Therefore, the discovery which Defendants have already conducted with respect to Lochmann is not necessarily relevant to any additional plaintiffs who might be added at this advanced date. Defendants will be unduly prejudiced by being forced to defend this action without the benefit of critical discovery.[10]

---

[10] Re-opening discovery at this late juncture is not a viable option, either. TRW 's Automotive Electronics group, where Plaintiff worked, has undergone substantial reorganizations since this case was filed and, in fact, no longer exists. Many key witnesses have pursued other employment opportunities. Defendants have secured testimony through depositions and affidavits. It will be difficult for Defendants to go back to these individuals and request

7

**C.    It Would Be Futile To Allow Lochmann To Amend Her Complaint To Include A Class Action Claim Because She Cannot Satisfy Any Of The Requirements of Fed. R. Civ. P. 23(a)**

Any attempt by Lochmann to amend her Complaint to include a class action claim should

be denied for the additional reason that such an amendment would be futile because Lochmann

will not be able to satisfy any of the requirements necessary to certify her class. Fed R. Civ. P.

23(a) provides:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all only if (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the class, (3) the
> claims or defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly and adequately
> protect the interests of the class.

A class may only be certified if all of these requirements have been met. In re American Med.

Systems, Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). Lochmann, however, cannot satisfy any of

them.

**1.    The Proposed Class is Not So Numerous that Joinder of All Members Would be Impracticable**

The first requirement for certifying a class is that joinder of all class members be

impracticable. In determining whether joinder is impracticable, the court must consider the size

of the proposed class, the class' geographical dispersion, the ability of claimants to bring

individual suits, and whether the members' names are easily ascertainable." See Rockey v.

Courtesy Motors, Inc., 199 F.R.D. 578, 582 (W.D. Mich. 2001). The plaintiff "cannot rely on

conclusory allegations that joinder is impractical." Id.

---

additional time from their own schedules to discover additional information relevant to Plaintiff's newest theory of
the case -- information which could have been discovered the first time around in a timely fashion.

8

All of the above factors suggest that joinder would, in fact, be practical. The size of the proposed class is small (only 18 people), the class is not geographically dispersed (rather, all were employed at a single facility), and all of the proposed class members are able to bring individual suits. Lochmann's assertion that her termination would have a chilling effect on other potential class members is simply disingenuous. Lochmann was justifiably terminated for the misappropriation of confidential information. As long as the potential class members do not take confidential salary information from TRW and forward it to their attorneys as Lochmann did, they need not fear termination should they decide to join the instant lawsuit as named plaintiffs.

Furthermore, Lochmann will have no trouble identifying the members of her proposed class because Defendants have produced to her an entire file regarding the internal equity review at issue, including a complete roster of employees whose salaries were considered, the names of employees whose salaries were adjusted, and the adjustment amounts. (Exhibits 1 and 2) Of course, where, as here, "class members can be easily identified, joinder is more likely to be practicable." Id., at 583. Thus, Lochmann cannot meet the requirements of Rule 23(a) because joinder would be eminently practical.

>        2.       **Lochmann Cannot Demonstrate Either Commonality or Typicality**

In order to be a proper class representative, Lochmann must have a good deal in common with the proposed class. Lochmann's assertions in this regard are fundamentally flawed because she was an Engineering Director and a decision-maker *who was intimately involved* in both ordering and conducting the internal equity review upon which she now seeks to base her claims. As previously discussed, the internal equity review was requested by the Engineering Directors,

9

of whom Lochmann was one.  It is utterly baffling how she now seeks to represent a proposed class of female employees on the other side of this review process.[11]

Numerous courts have held that "a conflict of interest may arise where nonsupervisory employees attempt to represent supervisory employees, or where exempt employees seek to represent nonexempt employees."  See Bacon v. Honda of Am. Mfg., Inc., 205 F.R.D. 466, 481 (S.D. Ohio 2001), *citing* Grant v. Morgan Guaranty Trust Co. of N.Y., 548 F. Supp. 1189, 1193 (S.D.N.Y. 1982) (conflict of interest for class to represent both managers who process promotions and employees who apply for them).  In Allen v. Chicago Transit Auth., 2000 WL 1207408, *11 (N.D. Ill. 2000), the court noted that "some class members are actually responsible for the decisions that are at issue."  Thus, "[t]he interests of the class members who are responsible for some of the challenged decisions conflict with the interests of class members who are challenging those decisions."  See also, Appleton v. Deloitte & Touche L.L.P., 168 F.R.D. 221, 230 n.5 (M.D. Tenn. 1996) (court will "follow the reasoning of those courts that have considered the job levels of potential class members in determining whether to certify a class," since a class with multiple job levels "presents commonality and typicality problems").

As an Engineering Director who was involved in determining the salary adjustments to be made pursuant to the 1999 internal equity analysis, Lochmann simply does not have enough

---

[11] Lochmann states in her Brief (p. 10) that the potential class members are "all female engineers at TRW's Farmington Hills facility subject to the discriminatory salary adjustments made by Muckley under the guides [sic] of the internal equity review."  She further states that she was a female engineer at the time of the review and was subject to the same discriminatory treatment of Muckley in salary adjustments.  (p. 10)  Although she has an Engineering degree, Lochmann was not and never has been employed by TRW in the capacity of Engineer.  She was a Director, supervising the Engineers.  Furthermore, it is undisputed that Directors' salaries were neither examined nor adjusted in connection with the salary review at issue.  (MacDonald; Muckley)  Although Defendants never deposed Lochmann regarding this issue (because discovery had closed by the time she filed her Motion), Lochmann would have had no choice but to admit this fact if asked about it during discovery.

in common with employees on the other side of the equation to justify her potentially representing them in a class action. See Hively v. Northlake Foods, Inc., 191 F.R.D. 661, 668 (M.D. Fla. 2000 ) (typicality not present where "each plaintiff's employment situation was unique in many ways, including pay, position and the manner and circumstances of termination or resignation"). Indeed, Lochmann cannot represent the class of female employees affected by the salary adjustments made pursuant to this equity review because she, herself, was not a part of it. The review process did not even consider the salaries of anyone at the Director level. (Muckley) Thus, Lochmann does not have even a single claim in common with her proposed class.

Even if Lochmann were to claim that her salary was ultimately reviewed by Muckley (*her* direct supervisor) in granting mid-year and year-end merit increases, such a claim is too individualized to allow her to be a proper class representative. In Gorence v. Eagle Food Centers, Inc., 1994 WL 445149, *10 (N.D. Ill. 1994), the court commented that "[i]f the named plaintiff's claims are too individualized, such that they do not arise from the same event, practice or course of conduct that gives rise to the claims of the other class members, typicality will not be found." The court found that the claims of the proposed class members were too different: "[c]ompensation, demotion and promotion decisions are made on a highly individualized basis . . . each plaintiff's work history and qualifications must be compared with the qualifications and work history of the workers in his or her department who were allegedly granted preferential treatment" in order to determine if discrimination had occurred. Id. See also, Rockey, 199 F.R.D. at 593 (it is entirely appropriate to refuse to certify a class action where "individualized questions of fact would predominate over common issues at trial"); Van Vels v. Premier Athletic

11

Center of Plainfield, Inc., 182 F.R.D. 500, 507 (W.D. Mich. 1998) ("where the nature of the legal claims are such that individuals would have to submit separate proofs to establish liability, class actions are disapproved due to lack of commonality").

In Allen, 2000 WL 1207408 at *8, the court held that the commonality requirement had not been met because the purported class included employees with varying jobs in many different departments. Thus, "[e]ach promotion or pay decision would present a different set of facts for each employee." Id. Also, "[m]any supervisors have made the challenged decisions using different methods and criteria depending on the particular position and department." Id. The court further held that "the record shows promotion and pay decisions are made at the level of individual departments by many different people using different methods with varying human resources involvement." Id., at *9.

Allen is particularly instructive here. Each Engineering Director was responsible for adjusting the salaries of his or her employees, both in conjunction with the equity review and in conjunction with standard mid-year and year-end merit increases. As to the equity review adjustments proposed, Muckley merely approved them without modification.[12]   (Muckley) There was no centralized administration or implementation of salary adjustments. This type of decentralized decision-making makes this matter particularly unsuited to be certified as a class action.   See Appleton, 168 F.R.D. at 231-32 (since decisions about hiring, evaluation, job assignment, etc., were made by local decision-makers with varying emphasis on different factors, "the Court is not persuaded that all members of the class are united by centralized decision-

---

[12] The same is true for mid-year and year-end merit reviews. Each Engineering Director was responsible for adjusting the salaries of his or her own employees, working within a predetermined budget.

making or application of uniform decision-making criteria"); Bacon, 205 F.R.D. at 479 ("commonality is not established where the decisions allegedly constituting discrimination were made by different supervisors and decision-makers"); Bennet v. Roberts, 2000 WL 781868, *4 (N.D. Ill. 2000) ("[t]he fragmented nature of the claims of each purported class member is further amplified by the lack of a centralized . . . decision-maker").

Lochmann is also an inappropriate class representative because she will be forced to spend a significant portion of her energies at trial arguing against several defenses which are inapplicable to all other potential class members. In O'Neil v. Appel, 165 F.R.D. 479, 492 (W.D. Mich. 1996), the court commented that "[a] defense that is peculiar to the named plaintiff can destroy typicality, because such a defense 'can distract the named plaintiff to such an extent that his or her representation of the interests of the rest of the class will suffer.'" Furthermore, "[t]o negate the typicality of a representative's claim, it is only necessary that the defense be 'unique, arguable and likely to usurp a significant portion of the litigant's time and energy." Allen, 2000 WL 1207408 at *11 ("[t]he presence of even an arguable defense against the named plaintiffs that is not applicable to the proposed class, can vitiate the adequacy of named plaintiffs' representation"); Gorence, 1994 WL 445149 at *10 ("it is well settled that typicality is not met when it appears that a major focus of the litigation will be on a defense unique to a named plaintiff"); Hively, 191 F.R.D. at 668 ("[t]ypicality is not present if the class representatives are subject to unique defenses that could be central to the litigation").

The focal points of Lochmann's case are two distinct job reassignments, which she alleges to be *de facto* demotions, and her termination for misappropriating confidential TRW salary information and sharing it outside the company. As to the reasons for her job

13

reassignments, it is likely that Defendants will rely on the testimony of some of the individuals working for Lochmann – the very group Lochmann is seeking to represent -- to support the reassignment decisions. Moreover, the conduct that resulted in Lochmann's termination not only provides a complete defense for the termination of her employment, but also cuts off all economic damages from the date TRW discovered her misconduct. Lochmann will undoubtedly devote a significant amount of time and energy to this issue, one that has absolutely nothing to do with any other potential class member.

Even with respect to her Equal Pay Act claim, Lochmann held a unique position. In order to sustain her claim of discrimination, Lochmann must prove that she was paid less than male counterparts for jobs requiring equivalent skill, effort and responsibility. Lochmann was an Engineering Director. There were only six other Engineering Directors, none of whose position required the same skill, effort and responsibility as Lochmann's. The remaining Engineering employees with whom Lochmann seeks to build a class were all subordinate to these Directors and to Lochmann. There is no possible argument Lochmann could make that any of these other employees' positions required the same skill, effort and responsibility as hers. Thus, her attempt to join with them in a class will fail, even as to her Equal Pay Act claim.

Finally, the statistics upon which Lochmann seeks to rely simply do not support her claim. Lochmann's statistical expert has admitted that his statistical analysis covers the period of September 1, 1999 through September 1, 2000. The adjustments resulting from the internal equity review, however, became effective on August 16, 1999. Thus, Lochmann's statistics cover an irrelevant time period and do not support her allegations. Courts must carefully examine statistics submitted in support of a proposed class certification in order to determine if

14

the statistical evidence truly supports a plaintiff's position.  In Bennet, 2000 WL 781868, at *5, the court held that "evidence of racial statistics was not enough to support commonality."  As the court determined, even accepting plaintiff's report as fact, "these statistics still do nothing [to] bind together the individualized nature of claims of the prospective class and the lack of a centralized hiring decision-maker."  Id.  Because Lochmann will not be able to establish either commonality or typicality with her proposed class, any amendment to her Complaint to include a class action claim will be futile.

### 3.   Lochmann Will Not Fairly and Adequately Protect the Interests of the Proposed Class Members

It naturally follows from the numerous differences articulated above that Lochmann similarly will not fairly and adequately protect the interest of the proposed class members.  As a former employee, Lochmann is primarily concerned with obtaining compensatory damages for her alleged discriminatory discharge.[13]  The injunctive relief requested in her Complaint does not represent what she realistically expects to recover through this litigation.  The proposed class members, however, as current employees, have neither the standing nor any interest in obtaining compensatory damages for Lochmann's discharge.  To the extent that they have any claims at all (which Defendants deny), their interest lies more appropriately in injunctions against further alleged inequitable compensation.

This conflict of interest was recognized in Slader v. Pearle Vision, Inc., 2000 WL 1702026 (S.D.N.Y. 2000).  The court held that the interests of the former employees "are, if anything, quite likely in conflict with the interests of current employees, for a former employee's

---

[13] There are no economic damages associated with Lochmann's two claims regarding reassignments since she suffered absolutely no wage loss or loss of job title.

15

primary interest necessarily centers on recovering back pay, while a current employee may well be far more interested in obtaining injunctive relief." Id., at *1.   To allow such former employees "to represent current employees in such situations comes close to denying the latter due process." Id.  See also, Bacon, 205 F.R.D. at 482 ("[c]ourts have declined to certify classes consisting of both former and present employees on the basis that commonality and typicality are lacking").

Plaintiff's fitness to be a class representative is also called into serious question by the very conduct for which she was terminated -- the misappropriation of sensitive, confidential company information.   The Hively court held that the plaintiff did not possess the trustworthiness or credibility to represent the proposed class because she had been terminated for rudeness to a customer: "[h]er credibility as a candidate for management, and subsequent class representative, could be tarnished by this incident."   See Hively, 191 F.R.D. at 669. Furthermore, another named plaintiff had "misrepresented the truth and made inconsistent statements" on her employment application, and her defense that she too should not have been terminated for rudeness to customer (when the customer was the only other witness to the incident) "may indicate irresponsibility or lack of credibility." Id.  Thus, because Lochmann cannot fairly and adequately protect the interests of the proposed class,  any attempt to amend her Complaint to include a class action claim would be futile.

D.   **It Would Be Futile To Allow Lochmann To Amend Her Complaint To Include A Class Action Claim Because She Cannot Satisfy The Requirements of Fed. R. Civ. P. 23(b)(2) or (3)**

In order to certify a class under Fed. R. Civ. P. 23(b)(2), the relief sought must be primarily equitable.  The seminal case concerning what qualifies as "primarily" is Allison v.

16

Citgo Petroleum Co., 151 F.3d 402 (5th Cir. 1998). The Alison court began its analysis by noting that "as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases." Id., at 413. Thus, the court held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." Id., at 415. By "incidental," the court meant "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." Id. (emphasis in original). The court affirmed the trial court's refusal to certify the prospective class, holding that "[t]he predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims." Id., at 419. See also, Gorence, 1994 WL 445149 at *7 ("[i]t appears that plaintiffs' primary motivation is to receive money damages, not injunctive relief. Accordingly, this class cannot be maintained as a (b)(2) class action").

The Sixth Circuit follows the Alison approach. In Bacon, supra, the court noted that "[c]ertification of a 23(b)(2) class turns on whether the injunctive and/or declaratory relief sought on behalf of the class predominates relative to any incidental monetary damages requested." See Bacon, 205 F.R.D. at 484 (*citing* Allison). Also, "compensatory damages, which compensate the plaintiffs for emotional and other intangible injuries, are an individual, not a class-wide remedy." Id., at 485. These are, of course, exactly the type of damages that Lochmann is requesting with respect to her claims surrounding her job reassignments and her termination. See also, Alexander v. Ford Motor Co., 204 F.R.D. 314, 321 (E.D. Mich. 2001)

17

("denial of Rule 23(b)(2) class certification is warranted where monetary relief predominates over any injunctive relief sought"); Butler v. Sterling, 201 F.3d 371 (table), text at 2000 WL 353502, **6 (6th Cir. 2000) (unpublished) (the Supreme Court "has expressed serious reservations about the propriety of certifying a 23(b)(2) class when compensatory or punitive damages are in issue, due to the lack of notice to class members or the opportunity for those members to 'opt out' of the class action"); Rockey, 199 F.R.D. at 595 ("the mere recitation of a request for declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action").

Plaintiff's proposed class certification likewise fails under Fed. R. Civ. P. 23(b)(3).  In Bacon, the court also noted that several courts "have declined to certify Rule 23(b)(3) class actions where individual issues concerning each class member's entitlement to monetary damages would predominate." See Bacon, 205 F.R.D. at 487.  Any calculation of such damages "will require a highly individualized inquiry into the circumstances of each class member to determine if or how he or she was injured by the alleged discriminatory practices and to what extent." Id.

The Gorence court has succinctly summarized why Lochmann cannot satisfy the requirements of Rule 23(b)(3): "[a]s detailed above, plaintiffs' claims are so individualized that there is no common nucleus of operative facts, and commonality is not met.  Because plaintiffs have failed to meet the relatively lax commonality requirement they cannot, under the more stringent Rule 23(b)(3), establish that common questions of fact and law predominate over those affecting individual class members." See Gorence, 1994 WL 445149 at *11.  Lochmann's own claims are simply too individualized and distinct from those of her proposed class members to

18

permit class certification under Fed. R. Civ. P. 23(b). Moreover, each of the individual proposed class members has, at best, her own individualized claim. A court would have to look at the education, work experience, performance reviews, etc. of each proposed class member in order to determine if her salary adjustment was fair as compared to her fellow employee. Thus, there is no single employee for whom common issues of both law and fact predominate. Because Lochmann will not be able to meet the requirements necessary to certify her class, it would be futile to allow her to amend her Complaint at this late juncture to include a class action claim.

## CONCLUSION

For the above reasons, Defendants respectfully request that this Court grant their Motion, Strike Plaintiff's Motion for Class Certification, and award Defendants their reasonable costs and attorneys' fees for the necessity of bringing this Motion. In the interests of efficiency, Defendants also request that the Court include in its Order a prohibition on Plaintiff seeking to amend her Complaint to include a class action claim at this point in the litigation.

Respectfully Submitted,

VERCRUYSSE METZ & MURRAY, P.C.

By: _Robert M. Vercruysse_
    Robert M. Vercruysse (P21810)

By: _Susan Hartmus Hiser_
    Susan Hartmus Hiser (P45681)

31780 Telegraph Road, Suite 200
Bingham Farms, Michigan 48025
(248) 540-8019

Dated: May 20, 2002                    **Attorneys for Defendants**

19

**PROOF OF SERVICE**

I served a copy of the above document by overnight
mailing it to Paul P. Asker on May 20, 2002.

I declare that the statements above are true to the
best of my knowledge.

Joy Ann Clarkson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED